1

2

3

4

5

6

7

8 **IN THE UNITED STATES DISTRICT COURT**

9 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 TALEAH KHAIRI ABOOD,                          No. 2:12-CV-1976-CMK

12          Plaintiff,

13      vs.                                      <u>MEMORANDUM OPINION AND ORDER</u>

14 COMMISSIONER OF SOCIAL
   SECURITY,

15
          Defendant.

16 _____/

17          Plaintiff, who is proceeding with retained counsel, brings this action for judicial

18 review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

19 Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

20 judge for all purposes, including entry of final judgment. <u>See</u> 28 U.S.C. § 636(c).  Pending

21 before the court are plaintiff's motion for summary judgment (Doc. 15) and defendant's cross-

22 motion for summary judgment (Doc. 18).  For the reasons discussed below, the court will deny

23 plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion

24 for summary judgment.

25 / / /

26 / / /

1

## I.  PROCEDURAL HISTORY[1]

2       Plaintiff applied for social security benefits on September 9, 2009, alleging an

3 onset of disability on January 1, 2009, due to disabilities including major depressive disorder and

4 post traumatic stress disorder.  (Certified administrative record ("CAR") 125, 142-49).

5 Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff requested an

6 administrative hearing, which was held on January 18, 2011, before Administrative Law Judge

7 ("ALJ") Jean R. Kerins.  In a February 4, 2011, decision, the ALJ concluded that plaintiff is not

8 disabled[2] based on the following findings:

9 _____

10     [1]      Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are

11 relevant to the issues presented by the parties' respective motions.

12     [2]      Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is

13 paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to

14 "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R.

15 §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

16

17      Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

18      Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is

19 appropriate.

     Step three:  Does the claimant's impairment or combination

20 of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically

21 determined disabled.  If not, proceed to step four.

     Step four:  Is the claimant capable of performing his past

22 work?  If so, the claimant is not disabled.  If not, proceed to step five.

23      Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not

24 disabled.  If not, the claimant is disabled.

25 Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

26      The claimant bears the burden of proof in the first four steps of the sequential evaluation

1.  The claimant has not engaged in substantial gainful activity since September 9, 2009, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments:  status post ventral hernia repair, degenerative disc disease of the lumbar spine, obesity, hypothyroidism, major depressive disorder, and posttraumatic stress disorder (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except: she could occasionally climb ramps and stairs; she could not climb ladders, ropes, and scaffolds; she retains the ability to understand, remember, and carry out simple instructions; she could make judgments on simple work-related decisions; she could interact appropriately with supervisors and coworkers; she could occasionally interact appropriately with the public; she could respond appropriately to usual work situations and changes in a routine work setting.

5.  The claimant has no past relevant work (20 CFR 416.965).

6.  The claimant was born on July 1, 1958 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7.  The claimant has limited education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 9, 2009, the date the application was filed (20 CFR 416.920(g)).

(CAR 10-20).  After the Appeals Council declined review on May 31, 2012, this appeal

process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1   followed.

## II.  STANDARD OF REVIEW

3           The court reviews the Commissioner's final decision to determine whether it is:

4   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

5   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

6   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

7   (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a

8   conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including

9   both the evidence that supports and detracts from the Commissioner's conclusion, must be

10  considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v.

11  Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

12  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

13  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

14  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

15  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

16  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

17  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

18  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

19  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

20  Cir. 1988).

## III.  DISCUSSION

22          Plaintiff argues the ALJ erred in three ways:  (1) the ALJ failed to properly

23  evaluate the consultative examiner's opinion; (2) the ALJ improperly rejected her treating

24  physicians' opinions; and (3) the ALJ improperly discredited plaintiff's testimony regarding her

25  subjective complaints, as well as her witness's statements.

26  / / /

1     **A.      EVALUATION OF CONSULTATIVE EXAMINER'S OPINION**

2              Plaintiff's first challenge is to the ALJ'S evaluation of the mental health

3     consultative examiner's (CE) opinion.  Dr. Renfro evaluated plaintiff on May 6, 2009.  Dr.

4     Renfro diagnosed plaintiff with major depressive disorder and post traumatic stress disorder

5     (PTSD).  His functional assessment/medical source statement as to plaintiff was as follows:

6              1.     She is able to understand, remember, and carry out  simple
                      one or two step-job instructions.
7              2.     She is unable to do detailed and complex instructions.
               3.     She is impaired in her ability to relate and interact with co-
8                     workers and the public. (Language barrier/acculturation
                      issues.)
9              4.     She is impaired in her ability to maintain persistence and
                      pace.  (Short-term memory, concentration, 6th grade
10                    education, no formal work history.)
               5.     She is not impaired in her ability to associate with day-to-
11                    day work activity, including attendance and safety. (Regular
                      night school attendance.)
12             6.     She is able to accept instructions from supervisors.
               7.     She is impaired in her ability to perform work activities on
13                    a consistent basis.
               8.     She is impaired in her ability to perform work activities
14                    without special or additional supervision. (Language
                      barrier/acculturation issues.)
15    (CAR 240-46).

16             In regards to this opinion, the ALJ stated:

17             [C]onsultative psychologist T. Renfro, Psy.D., examined the
               claimant and opined that she is able to understand, remember, and
18             carry out simple one or two-step job instructions; she is unable to
               do detailed and complex instructions; she is impaired in her ability
19             to relate and interact with co-workers and the public due to
               language barriers; she is impaired in her ability to maintain
20             persistence and pace; she is impaired[3] in her ability to associate
               with day-to-day work activity, including attendance and safety; she
21             is able to accept instructions from supervisors; she is impaired in
               her ability to perform work activities on a consistent basis; and she
22             is impaired in her ability to perform work activities without special
               or additional supervision. (Ex. 6F/6-7).
23    (CAR 15)

24    _____

25         [3]     The court notes the inconsistency with this statement and what Dr. Renfro set
      forth in his statement.  It appears this is simply a typographical error as Dr. Renfro stated that
      plaintiff is *not* impaired in her ability to associate with day-to-day work activity, noting plaintiff's
26    attendance at night school and this is consistent with the ALJ's RFC.

1          The ALJ used the State agency reviewing psychiatrist's review of Dr. Renfro's

2   evaluation, stating that Dr. Loomis:

3              opined that the claimant is capable of understanding, remembering,
               and carrying out simple one or two step task; she is able to
4              maintain concentration, persistence, and pace throughout a normal
               workday or workweek as related to simple tasks; she is able to
5              interact adequately with coworkers and supervisors without
               difficulty dealing with the demands of general public contact; and
6              she is able to make adjustments and avoid hazards in the
               workspace. (Ex. 15F/3).
7   (CAR 15).

8          The ALJ then gave both of these "opinions significant weight as they are

9   consistent with the general record, and they are also based on Dr. Renfro's evaluation wherein

10  the claimant demonstrated evidence of considerable mental abilities upon mental status

11  examination." (CAR 15).

12         Plaintiff contends that the ALJ misinterpreted Dr. Renfro's opinion, and using the

13  State agency physician's opinion essentially rejected the limitations Dr. Renfro found plaintiff

14  had.  Defendant counters that the ALJ properly utilized the State agency physician's opinion to

15  interpret Dr. Renfro's opinion.  The undersigned agrees with defendant's position.

16         Dr. Renfro made some specific findings as to plaintiff's limitations.  He

17  specifically found plaintiff is able to understand, remember, and carry out simple one or two

18  step- job instructions;  accept instructions from supervisors; and is not impaired in her ability

19  associate with day-to-day work activity, including attendance and safety.  So there were no

20  limitations assessed as to those abilities.  Dr. Renfro similarly specifically found plaintiff unable

21  to do detailed and complex instructions.  Again, this is a specific limitation found.  However, as

22  to the remainder, Dr. Renfro opined that plaintiff's abilities are "impaired" as to her ability to

23  maintain persistence and pace, and her ability to perform work activities on a consistent basis.

24  Dr. Renfro further opined that plaintiff is "impaired" due to her language barrier as to her ability

25  to relate and interact with co-workers and the public, and her ability to perform work activities

26  without special or additional supervision.

1    The ALJ accepted the specific abilities and limitations Dr. Renfro set forth, to the

2  extent she was found either able or unable to perform a specific task.  However, as to plaintiff's

3  impairment as to other tasks, the ALJ turned to Dr. Loomis for further interpretation.  Dr.

4  Renfro's finding that plaintiff's abilities were impaired is not the same as finding she is unable to

5  perform a specific task.  This appears to be the interpretation plaintiff argues the ALJ should

6  have given to Dr. Renfro's opinion.  However, the undersigned finds no support for such an

7  interpretation.  Dr. Renfro's finding that plaintiff is impaired in some abilities is not the same as

8  finding her completely incapable of performing those functions.  If that was what Dr. Renfro

9  found, that would have been assessed as was done with other of plaintiff's abilities.  It is the

10  ALJ's duty to determine the limitations plaintiff has, and doing so based on the evidence in the

11  record.  Utilizing the State agency physician's opinion is an acceptable method to use in

12  interpreting a CE's opinion.

13    Plaintiff simply disagrees with the ALJ's interpretation.  However, this court

14  cannot substitute it's own interpretation over the ALJ's.  If substantial evidence supports the

15  administrative findings, or if there is conflicting evidence supporting a particular finding, the

16  finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th

17  Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation,

18  one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas

19  v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

20  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

21  Cir. 1988).

22    As discussed below, the ALJ did not err in her analysis of the medical opinions in

23  the record.  Finding the treating physicians' opinions unpersuasive as not fully supported by the

24  record, and the treatment record in general as supporting the State agency physician's

25  interpretation, are sufficient basis for the interpretation of Dr. Renfro's assessment of plaintiff's

26  limitations.  The undersigned finds no reversible error.

1          **B.       REJECTION OF TREATING PHYSICIANS' OPINIONS**

2                   Next, plaintiff contends the ALJ erred in rejecting her treating physicians'

3   opinions.

4                   The weight given to medical opinions depends in part on whether they are

5   proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

6   821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

7   professional, who has a greater opportunity to know and observe the patient as an individual,

8   than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

9   (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

10  to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

11  (9th Cir. 1990).

12                  In addition to considering its source, to evaluate whether the Commissioner

13  properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

14  in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

15  uncontradicted opinion of a treating or examining medical professional only for "clear and

16  convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

17  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

18  by an examining professional's opinion which is supported by different independent clinical

19  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

20  1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

21  rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

22  81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

23  the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

24  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

25  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

26  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

1  without other evidence, is insufficient to reject the opinion of a treating or examining

2  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

3  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

4  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

5  see also Magallanes, 881 F.2d at 751.

6  Here, there were five treating physicians who opined plaintiff was unable to work.

7  The ALJ determined those opinions were not supported by the record.  The opinions of the

8  treating physicians, which the ALJ found unpersuasive and gave little weight to, were

9  contradicted by the opinion of the CE.  Specifically, the ALJ found:

10  Although a treating source, Dr. Stromberg's opinion is
    unpersuasive because it is not supported by her own authored
11  treatment notes. Specifically, Dr. Stromberg made generally mild
    findings upon mental status examination. (Ex. 2F/7-8).  Moreover,
12  despite opining posttraumatic stress disorder difficulties, Dr.
    Stromberg earlier stated that it was "difficulty [sic] to elicit
13  whether the patient has symptoms of post-traumatic stress
    disorder." (Ex. 2F/6). Thus, Dr. Stromberg's opinion is given little
14  weight.

15  Treating physician Erik Youngdate, M.D., completed a medical
    opinion and stated that the claimant is mentally unable to work,
16  and she has limitations affecting her ability to work or participate
    in education or training. (Ex. 4F/1). Dr. Youngdale's authored
17  treatment notes also state that the claimant has "very significant
    and disabling symptoms." (Ex. 29F/34). However, Dr. Youngdale
18  provided no supporting basis for his opinion.  Furthermore, Dr.
    Youngdale's opinion that the claimant is unable to work
19  necessarily entails vocational knowledge of the skills demanded of
    today's labor market; however, there is no indication that Dr.
20  Youngdale possesses any expert vocational knowledge.  Thus, Dr.
    Youngdale's opinion is given little weight.
21
    Treating physician Farshid Farrmhi, M.D., similarly opined that
22  due to her mental condition, the claimant is unable to work. (Ex.
    11F/2).  Dr. Farrmhi opined that the claimant has poor ability to
23  understand and remember detailed or complex instructions; she has
    fair ability to understand and remember very short and simple
24  instructions; she has poor ability to carry out instructions; she has
    fair ability to attend and concentrated [sic]; she has poor ability to
25  work without supervision; she has poor ability to interact with the
    public, coworkers, and supervisors; she has poor ability to adapt to
26  changes in the workplace; she has poor ability to be aware of

9

1    normal hazards and react appropriately; and she has poor ability to
2    use public transportation to travel to unfamiliar places. (Ex. 11E/9-
     10).

3    However, Dr. Farrmhi's opinion is unpersuasive as he primarily
     based his opinion on the claimant's subjective complaints and
4    reports.  Dr. Farrmhi provided no significant objective basis for his
     opinion, other than basing it on "limited" mental status
5    examination. (Ex. 11E/9).  In fact, Dr. Farrmhi stated her condition
     is somewhat transient, as he expected her limitations to last for
6    merely six moths. (Ex. 11F/2). Thus, Dr. Farrmhi's opinion is
     given little weight.
7
     Treating mental health counselor Marie Cerillo, completed a
8    Mental Capacities form and opined that the claimant's mental
     condition results in her having no energy to wake in the morning;
9    she has difficulty bathing and dressing; she is claustrophobic in
     small rooms; due to her mental condition, she is either sleeping or
10   crying; she is afraid to leave her home and she is uncomfortable
     around more than two people; she has no friends; she relies on her
11   two children to take care of the household chores, shopping, and
     cooking; she is unable to focus on her English lessons; she is
12   unable to focus enough to shop for food; she cannot focus for even
     a few minutes on a task; she is distracted by her thoughts; she is
13   unable to learn new things; she replays traumatic experiences; she
     cannot cope with even small amounts of stress; she is nervous and
14   anxious around others; she cannot be away from home for long
     periods; she has difficulty making small decisions; and she is
15   forgetful. (Ex. 11E/13).

16   However, Ms. Cerillo's opinion is unpersuasive as it is primarily
     based on the claimant's subjective reports, which, as discussed
17   below, are not entirely credible.  Moreover, Ms. Cerillo is not an
     acceptable medical source per 20 C.F.R. 416.913(a).  Thus, Ms.
18   Cerillo's opinion is given little weight.

19   (CAR 15-16).

20        Where, as here, there are controverted medical opinions based on independent

21   clinical findings, the ALJ is the one to resolve the conflict.  So long as the ALJ sets forth

22   legitimate reason for his decision, which are supported by the record, his determination will not

23   be disturbed on review.  Here, the ALJ determined the Dr. Stromberg's opinion was not

24   supported by her treatment notes.  While plaintiff disagrees with this assessment, the ALJ's

25   reason is supported by the record.  The ALJ next found Dr. Youngdale's opinion was not

26   supported by his treatment notes. Again, plaintiff disagrees with the assessment, but the reason is

1  again supported.  As to Dr. Farrmhi's opinion, the ALJ gave it little weight as it was based

2  primarily on plaintiff's subjective complaints and reports, and no significant objective basis.  As

3  discussed below, the ALJ makes credibility findings and when the ALJ finds plaintiff's

4  subjective complaints not fully credible, then a doctor's opinion based thereon can be rejected.

5  While the other reasons the ALJ provided are somewhat suspect, this reason is legitimate and

6  supported by the record. And even if some of the other reasons provided were invalid, such an

7  error would be harmless where the ALJ provided other, adequate reasons for rejecting the

8  doctor's opinion.  See Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir.

9  2004).

10            As to the ALJ's rejection of plaintiff's counselor's opinion, because a therapist is

11  an "other source" rather than an "acceptable medical source" under 20 C.F.R. § 404.1513, the

12  ALJ only had to provide "reasons germane" to the therapist in order to discount her opinion.  See

13  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).   Here, the ALJ determined the opinion is

14  based primarily on plaintiff's subjective reports, which he determined not entirely credible. Thus,

15  germane reasons were provided, which are supported by the record.

16            Plaintiff also objects to the ALJ's treatment of Dr. Kyaw's assessment of her

17  physical capabilities.  As to Dr. Kyaw's opinion, the ALJ found

18            Treating physician Victor Kyaw, M.D., completed a medical
            source statement and opined that the claimant could stand and/or
19            walk for less than an hour continuously, for a total of 1 to 2 hours
            in an 8-hour workday; she could sit for less than an hour
20            continuously, for a total of 1 to 2 hours in an 8-hour workday; she
            could occasionally lift and/or carry less than 5 pounds; she is
21            unable to climb stairs or ladders; she is restricted in bending; she
            requires rest periods during the day; she is unable to perform
22            sedentary work; and she is unable to work an 8-hour day, five days
            per week. (Ex. 22F/5-8; 11E/11-12).
23
            Although a treating source, Dr. Kyaw's opinion is unpersuasive.
24            Dr. Kyaw primarily attributed the claimant's limitations due to
            lower back pain; however, Dr. Kyaw's authored treatment notes
25            revealed generally mild findings. (Ex. 22F).  In fact, Dr. Kyaw
            often found no significant findings about the back upon physical
26            examination. (Ex. 22F/2, 4, 7). Moreover, Dr. Kyaw opined that

1    the claimant would have emotional or mental dysfunction, and an
2    inability to perform sustained work due to depression. (Ex. 22F/6,
     7). However, Dr. Kyaw is not a mental health expert.  Thus, Dr.
     Kyaw's opinion is given little weight.
3  (CAR 17).

4          Given that Dr. Kyaw's opinion was controverted by a consultative physician,

5  Laura Grigor, M.D., who examined plaintiff and opined plaintiff was significantly less limited

6  that Dr. Kyaw found, the ALJ again had conflicting medical opinions based on independent

7  clinical findings which he was charged with resolving.  He did so, setting forth specific reasons

8  for limiting the weight given to Dr. Kyaw's opinion.  The reasons set forth are again supported

9  by the record.

10         The undersigned finds the ALJ provided sufficient reasons, supported by the

11  record, for discounting plaintiff's controverted treating physicians' opinions.

12         **C.    PLAINTIFF'S CREDIBILITY**

13         The Commissioner determines whether a disability applicant is credible, and the

14  court defers to the Commissioner's discretion if the Commissioner used the proper process and

15  provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

16  credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

17  F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

18  821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

19  and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

20  evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

21  credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

22  1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

23  and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

24         If there is objective medical evidence of an underlying impairment, the

25  Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

26  because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

12

1   341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

2           The claimant need not produce objective medical evidence of the
        [symptom] itself, or the severity thereof.  Nor must the claimant produce
3       objective medical evidence of the causal relationship between the
        medically determinable impairment and the symptom.  By requiring that
4
        the medical impairment "could reasonably be expected to produce" pain or
5       another symptom, the Cotton test requires only that the causal relationship
        be a reasonable inference, not a medically proven phenomenon.
6

7   80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799

8   F.2d 1403 (9th Cir. 1986)).

9           The Commissioner may, however, consider the nature of the symptoms alleged,

10  including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

11  947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

12  claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

13  testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

14  prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

15  physician and third-party testimony about the nature, severity, and effect of symptoms.  See

16  Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

17  claimant cooperated during physical examinations or provided conflicting statements concerning

18  drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

19  claimant testifies as to symptoms greater than would normally be produced by a given

20  impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

21  Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

22          The ALJ found plaintiff's testimony less than fully credible.  Her assessment of

23  plaintiff's credibility is set forth as:

24          Despite the above evidence, the claimant contends that she is more
        limited than opined.  The claimant alleges that she is often
25      fatigued; she naps throughout the day; she relies on family to
        perform house chores; she has tremors throughout her body; she is
26      unable to perform simple tasks; she could stand and/or walk for 10

1    to 15 minutes before feeling pain; she is depressed; she is unable to
     do anything; her feelings are blocked; she has memory and
2    concentration problems; she could pay attention for 15 to 20
     minutes; she has no motivation to socialize with others; and she
3    could not work full time due to her mental issues.

4    Waleed Alar, the claimant's friend, completed a Function Report
     and alleged that she cannot sleep without medication; she is scared
5    when she tries to shower; she is able to prepare only simple meals;
     she performs only light cleaning, which takes her all day; she has
6    no hobbies; she has no desire to socialize due to depression; she
     could walk for a quarter of a mile before having to rest for 15 to 20
7    minutes; and she could pay attention for a few minutes. (Ex. 3E).

8    After careful consideration of the evidence, the undersigned finds
     that the claimant's medically determinable impairments could
9    reasonably be expected to cause the alleged symptoms; however,
     the claimant's statements concerning the intensity, persistence and
10   limiting effects of these symptoms are not credible to the extent
     they are inconsistent with the above residual functional capacity
11   assessment for the following reasons:

12   First, the claimant's allegations of mental functioning difficulties
     are not credible, to the extent alleged.  The claimant's allegations
13   are partially supported by her seeking mental health treatment.  The
     claimant's allegations are also partially supported by a treating
14   source issuing a global assessment of functioning (GAF) score as
     low as 50 (Ex. 13F/4), which the *Diagnostic and Statistical*
15   *Manual of Mental Disorders*, 4th ed., recognizes as serious
     symptoms or any serious impairment in social, occupational, or
16   school functioning.

17   However, the claimant's allegations are disproportionate to the
     generally mild findings made by treating sources upon mental
18   status examination. (Ex. 2F, 13F, 25F, 29F).  The claimant's
     allegations are also inconsistent with her admissions to treating
19   sources, which suggest that she is quite functional.  For example,
     the claimant had reported that she has "been feeling better" with
20   medication (Ex. 2F/2; 13F/8); she has decreased anxiety with
     Remeron (Ex. 2F/10; 13F/14; 25F/12; 29F/5); "she had much
21   improved symptoms" when her marital issues resolved (Ex.
     13F/2); "her concentration and memory are much better" and her
22   "mood has improved" with medication (Ex. 13F/12); her
     "medication were excellent" (Ex. 13F/20; 25F/3); and she is able to
23   concentrate in class and remember what is being taught" (Ex.
     29F/34).  As such, treating sources have stated that the claimant
24   has enjoyed adequate response to medications (Ex. 13F, 25F, 29F);
     her attention and other cognitive function are "grossly intact" (Ex.
25   13F/5); and her depression and posttraumatic stress disorder
     "responded to medication with residual symptoms" (Ex. 29/F/20).

26

14

1
2
3

> Accordingly, while the claimant may experience some level of psychiatric-based symptoms, the weight of the evidence suggests that she is nonetheless able to perform a wide range of unskilled work.

4
5
6
7
8

> Second, the claimant's allegations of pain and fatigue are not credible, to the extent alleged. Despite such allegations, physical examinations have revealed generally mild findings (Ex. 7F, 9F, 12F); the claimant has reported merely "occasional" abdominal pains (Ex. 9F/9); and she has demonstrated evidence of considerable physical abilities during the consultative internal medicine evaluation (Ex. 5F/2-4). Accordingly, while the claimant may experience some level of pain and fatigue, the weight of the evidence suggests that she is nonetheless able to perform light exertional work.

9

> Thus, the claimant's allegations, and allegations of supporting third parties, are generally not credible.

10   (CAR 17-18).

11          Here, plaintiff is challenging the ALJ finding that plaintiff's allegations as to her

12   difficulties not entirely credible. The undersigned finds the ALJ provided sufficient reasons for

13   discounting plaintiff's testimony regarding the severity of her symptoms. The ALJ found her

14   allegations disproportionate to the generally mild findings made by her treating sources,

15   specifically that she reported significant improvement with treatment and examinations revealed

16   generally mild findings, both upon mental status examination and as to her physical allegations.

17   The undersigned finds ALJ's determination to be supported by the record.

18          As for the statements from plaintiff's friend, the ALJ did not completely ignore

19   those statements. While she did not explicitly state she was rejecting plaintiff's witness's

20   statements for the same reasons, the ALJ certainly implied as much. An ALJ generally must

21   consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12

22   F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed,

23   "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is

24   competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v.

25   Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the

26   testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12

1   F.3d at 919.  The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-

2   party statements where the statements are similar.  See Valentine v. Commissioner Soc. Sec.

3   Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's

4   testimony, which was similar to the claimant's, for the same reasons given for rejection of the

5   claimant's complaints).

6        As was the case in Molina v. Astrue, 674 F.3d 1104 (9th Cir. 2012), the ALJ

7   referenced the third party statements, noted the statements were similar to plaintiff's, and

8   discounted them as with plaintiff's.  It is clear that the ALJ rejected the third party statements for

9   the same reasons she rejected plaintiff's.  While the ALJ should have specifically provided

10  reasons germane to Mr. Alar, any error in not doing so would be harmless in this situation as it is

11  apparent that the lay witness statements were rejected for the same reasons as plaintiff's

12  statements were rejected, and those reasons were sufficient.  See Molina, 674 F.3d at 1118.

13       As stated above, the court defers to the Commissioner's discretion in assessing

14  credibility if proper reasons are provided.  Given the proper deference, the court finds no error in

15  the ALJ's credibility determination.

16                    **IV.  CONCLUSION**

17       Based on the foregoing, the court concludes that the Commissioner's final

18  decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

19  ORDERED that:

20            1.   Plaintiff's motion for summary judgment (Doc. 15) is denied;

21            2.   Defendant's cross-motion for summary judgment (Doc. 18) is granted; and

22            3.   The Clerk of the Court is directed to enter judgment and close this file.

23

24  DATED:  March 26, 2014

    _____
    **CRAIG M. KELLISON**
25  UNITED STATES MAGISTRATE JUDGE

26